UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MONY LIFE INSURANCE COMPANY,
f/k/a The Mutual Life Insurance
Company of New York,

               Plaintiff,

v.    No. 8:19-cv-2031-WFJ-TGW

BERNARD R. PEREZ,

               Defendant.
_____/

BERNARD R. PEREZ,

               Counter-Plaintiff,

v.

MONY LIFE INSURANCE COMPANY;
NEW ENGLAND CLAIMS ADMINISTRATION
SERVICES, d/b/a Disability Management Services, Inc.,

               Counter-Defendants.
_____/

**ORDER DENYING COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE COUNTERCLAIMS (Doc. 244)**

This matter came before the Court on both counter-defendants' motion at docket 244 for summary judgment on Perez's counterclaims at docket 191.  The

Court has taken extensive briefing on the matter and held a hearing. The motion is denied. The counterclaims remain for trial.

***Background:*** The Court provides this brief background. Perez is an eye surgeon who claimed disability benefits in 2011 under a MONY Life Insurance Company ("MONY") disability policy, Doc. 1-2, that he first purchased in 1988.[1] MONY paid monthly disability benefits starting in 2011 but MONY suspended payments under the policy in 2018 based on a dispute with Perez. Perez contended that MONY wanted him to settle the policy and MONY was using the threat of an onerous, extra-contractual forensic audit to compel same. MONY contended that it was unsure about Perez's financial and medical bona fides which cast doubt on his entitlement to coverage payments and Perez refused to provide the requested audit to support his claim.

Perez first filed suit in state court, which MONY removed here, asserting diversity of citizen as the ground for federal court jurisdiction. Case No. 8:18-cv-

---

[1] Movant MONY and its co-movant and fellow counter-defendant referred to as DMS assert that DMS is the third-party administrator (a Florida statutory term) of the MONY policy. They defend here represented by the same counsel. They have defended this matter identically. The precise nature of their relationship will be addressed at trial, but for the purposes of this motion and lawsuit all parties have treated them nearly identically without any divergent interest shown or alleged between them nor any dissimilar defense asserted. To keep it simple the Court refers to them both here as MONY on occasion, when most of the activity actually involved DMS operating for/as MONY or as its agent (this is disputed). It does appear that, except for MONY writing the initial policy and selling Perez an upgrade, DMS has conducted most all of the activity in this factual record. DMS has sought no affirmative claims against Perez, but Perez sued DMS as an alter ego of Plaintiff MONY and the parties have treated DMS as a counter-defendant.

2123, Doc. 1-4 at 1.  Perez dismissed that action without prejudice (*id*. Doc. 36), and the matter continued in state court.

In 2019 MONY filed the instant action under diversity jurisdiction, seeking a declaration that MONY has the right to condition payments of any future benefits upon Perez's acquiescence to a forensic financial audit of his medical practice and production of more detailed financial data since 2010, and further seeking a judgment that Perez is not entitled to residual income loss benefits.  Doc. 1 at 7–8.  In an amended complaint filed September 30, 2019, MONY sought similar relief but also sought repayment of prior benefits paid through counts for unjust enrichment and restitution.  Doc. 13.  In both the amended complaint and a second amended complaint filed eight months later MONY stated, "The Policy, which is not governed by ERISA (29 U.S.C. Chapter 18 and related sections), remains in effect to the present day."  Doc. 13 at 2; Doc. 43 at 2.

Twenty months after stating that the policy was not governed by ERISA, MONY moved to amend its complaint and affirmative defenses to state that the policy was ERISA-controlled, and thus the state law counterclaims asserted by Perez were preempted.  Doc. 119 at 2.  Thus for the first three years of the parties' litigation no ERISA issue was addressed and MONY had asserted the policy was *not* ERISA-controlled.  The undersigned permitted this amendment, notwithstanding Perez's contention that it came too late and MONY had made

3

clear judicial admissions to the contrary in earlier proceedings. To permit MONY and its fellow counter-defendant DMS a full day in court on their asserted merits, the undersigned permitted this out-of-time amendment.

MONY filed a third-amended complaint, Doc. 159, and after some litigation Perez filed an amended answer with counterclaims. Doc. 191. Perez's counterclaims against MONY and DMS are: Count I for breach of insurance contract; Count II for statutory bad faith; and Count III for fraud. Doc. 191 at 20.[2]

Counter-defendants first move for summary judgment on all of Perez's counterclaims by asserting ERISA preemption. The Court discusses the legal standards below and then explains why MONY/DMS have not borne their burden of establishing ERISA preemption on this record.

***Standards Governing ERISA Preemption***: Whether an ERISA plan exists bears upon jurisdiction and, as movants note (Doc. 244 at 5) is a legal issue for the Court to decide. *See Letner v. Unum Life Ins. Co. of America,* 203 F. Supp. 2d 1291, 1297 (N.D. Fla. 2001) (citing cases). ERISA defensively preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan…." 29 U.S.C. §1144(a). And if the state law claims asserted by Perez in his counterclaims relate to an ERISA benefit plan, they are surely preempted by

---

[2] The Court expects Count II will only be addressed and reached if the jury first finds a breach of the insurance contract.

4

ERISA. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47-48, 107 S. Ct. 1549, 1553 (1987).

To prove this preemption, movants bear the burden of establishing by the greater weight of evidence: that there is a plan, fund or program established or maintained by an employer to provide benefits for employees. *See generally, Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir. 1982); 29 U.S.C. §1002(1).

***Perez's MONY Disability Policy Was Not An ERISA Plan:*** MONY had the disability policy labeled correctly for the first three years of this legal dispute: Perez's policy was an individual disability policy, not subject to ERISA. There was no ERISA plan or program. To determine this, one must examine this record and how the parties acted or treated this insurance policy.

This policy text itself shows it is an individual policy for Dr. Perez, on a MONY form for individual policies. Doc. 1-2; Doc. 258 at 2; Doc. 262. Perez bought it for himself in 1988. MONY concedes the policy was an individual, not ERISA policy when Perez bought it. Doc. 229 at 4; Doc. 263 at 2–3; Doc. 258 at 2; Doc. 262; Doc. 222 at 168. The policy application asked if the insurance was part of a qualified Retirement (Pension) Plan and the answer was "No." Doc. 258 at 2; Doc. 262 at 2. A supplemental application for an overhead expense policy asked whether Perez was in a partnership or multi-member organization and the

5

answer was "No." *Id.* In 1991 as part of a supplemental application the MONY field underwriter certified that Perez will pay the premium, that a payroll allotment was being established, and Perez did not have group association coverage in force. Doc. 258 at 3; Doc. 262 at 2. MONY noted that a payroll allotment was established for Perez with the MONY policy, and also separate, individual payroll allotments for his brother and sister who had purchased policies. *Id.*; Doc. 242 at 33. Another field underwriter for DMS on Perez's policy noted that the insured, and not the employer, will pay the premium. Doc. 242 at 87. In 2011 Perez answered "no" on MONY's form whether the employer was paying the premiums. Doc. 229-10.

MONY states that when Perez and his physician brother joined each other to work under their two-doctor professional association (Perez & Perez, P.A.) in 1994, the ERISA "plan" came into being. Doc. 244 at 5; Doc. 263 at 2. In effect, the same individual policy then morphed into an ERISA plan. There is simply no competent proof of this. The plan never conjured into being on this record. No "plan" exists on paper or any other memorial. No accoutrements of an ERISA plan, with reporting, Form 1099s showing employer ERISA benefits paid, *etc.* exist or ever existed. No fiduciary activity is evidenced by any party or was ever undertaken. There is no evidence of any requirements for a bona fide ERISA plan, as set forth in 29 U.S.C. §11022 *et. seq.*, such as a required summary plan

6

description, annual report filed with the Secretary of Labor, periodic accountant examination of plan, *etc.*[3] Nor is there any fiduciary bond for this purported plan, or other required ERISA information provided to the alleged beneficiaries. No mention of ERISA or an employee benefit plan existed since 1988 until MONY's able counsel first brought up the subject in 2021.

Besides clearly being an individual insurance policy on its face and by Perez's and other's uncontradicted testimony, MONY for the entire time treated the policy as individual, not ERISA-based. The documents bear this out, as does the testimony.

The DMS employee who managed Perez's policy and claim during most of its existence testified that she administered individual MONY disability policies in her career and never managed group or employer sponsored plans. Doc. 222 at 18, 170. This employee who handled Perez for MONY/DMS testified that the policy was not a group policy, it was an individual policy, and MONY/DMS did not treat Perez's policy as an ERISA policy. *Id.* at 169. This employee testified MONY never issued any tax statements to Perez concerning the disability payments, or withheld taxes therefrom (*id.* at 169), which statements or withholding would have suggested an ERISA policy. *See also* Doc. 224 at 262 (Perez CPA: DMS

---

[3] For a list, *see Raymond B. Yates, M.D., P.C. v. Hendon,* 541 U.S. 1, 6, 124 S. Ct. 1330, 1335 (2004).

7

employee stated they had no intention of issuing a 1099 to Dr. Perez). MONY assigned the personal, individual (not group) policy manager to this insurance policy for its duration and treated the policy entirely as one personal to Perez. MONY showed it never considered Perez's policy as employer-based, ERISA plan. If Perez's personal, individual policy grew into an ERISA group policy in 1994 as MONY's lawyers now contend, MONY never treated it as such then, or ever.

When Perez had a new accountant take over work, the MONY employee later emailed him in January 2013 about a possible error in the CPA providing, for the 2011 tax year, tax treatment inconsistent with a personal policy. There was some confusion that year due to a new CPA not having all of the information, but this brief and aberrant confusion cited by MONY ten years later does not an ERISA plan make. *See* Doc. 246 at 4960–4964; Doc. 224 at 260–263. The greater weight of this record supports that both the policy premium expense and later the benefit payments were treated accounting and tax-wise as an individual, not employer-sponsored, policy. *See* Doc. 224 at 116, 123–124, 261–262.

In no year including 2011 did MONY ever issue a 1099, W-2, or any other tax advice to Perez for the disability benefits he received, which would have been issued had the benefit been one payable under ERISA. This is consistent with the unequivocal fact that MONY/DMS never thought the policy was an ERISA policy.

8

Although one of the two family law affidavits filed by Perez in his 2009 divorce court is equivocal, viewed in their entirety those affidavits show the premiums as a personal expense of Perez himself. And the affidavit that does so unequivocally is the final one. Doc. 229-7 at 2, 5; Doc. 266-1 at 5.

Establishing this defense is MONY's burden. The greater weight of the facts is either not in MONY's favor on this issue or, at best for MONY, flatly contested. For example, both Perez and his physician brother testified that the premiums were not purchased and paid for by the practice but by each individual. Doc. 225 at 254–255; Doc. 226 at 52.

MONY argues that the medical practice remitted the premiums from the corporate checking account and that shows this was an ERISA employer plan for benefit of the employee. The greater weight of evidence in this record, including interrogatory answers and depositions, shows this was not the corporate body paying for an employee benefit as a corporate expense. Rather, the practice (like other items paid for the doctors) attributed the expense not as a corporate cost, but to the doctors personally as income. *See* Doc. 220-1 at 3; Doc. 224 at 115-116, 120; Doc. 246 at 208. In other words, the employing P.A. may have "written the checks" for the premiums but did not incur them as a cost because the premium amounts were part of Perez's gross income allotted to him as payroll and he paid taxes on those amounts. A contemporaneous example of this can be seen in the

9

Perez CPA January 29, 2013 email to DMS (Doc. 246 at 208).  *See generally B-T Dissolution, Inc. v. Provident Life and Acc. Ins. Co.,* 175 F. Supp. 2d 978, 983 (S.D. Ohio 2001).

MONY must argue that the existence of an ERISA plan is an objective test, and that MONY itself was an ERISA plan administrator unknowingly, and complied not a whit with its ERISA obligations for 34 years.  Indeed the test for a plan's existence is objective, not subjective.  And the objective proof of an ERISA plan in this large record is well outweighed by proof to the contrary.  It seems most unlikely that MONY, one of the most well-established and sophisticated actors in the insurance world, would treat an ERISA benefits plan mistakenly as something else for several decades.

MONY has not carried its burden of establishing by a preponderance of evidence an employee welfare benefit plan covering Perez because of his employee status.  Thus, the Court need not spend much time on the safe harbor, which Perez has also satisfied.[4]  ERISA issues are out of this case.

---

[4] No matter which party bears the burden of proof on the "safe harbor" issue, the Court finds Perez is within the safe harbor based upon the greater weight of evidence in this detailed factual record.  In a nutshell, 29 C.F.R. 2510.3-1(j) excludes from ERISA coverage an insurance program if:  1) no contributions to the plan are made by the employer; 2) employee participation is completely voluntary; 3) the sole functions of the employer with respect to the plan are, without endorsing the plan, to collect premiums through payroll deductions or dues checkoffs and forward them to the insurer; and 4) the employer received no monetary or other consideration in connection with the plan.  Even if one assumes a "plan" ever existed, these safe harbor elements are covered in Perez's favor by the preponderance of proof in this record.

Movants also move for summary judgment on Count III because that fraud claim is not pled with the specificity required by Fed. R. Civ. P. 9(b) and for failure to prove a false statement of material fact. This portion of the motion is likewise denied.

As to the Rule 9(b) allegation, a main purpose of the specificity required by that rule is to prohibit a plaintiff from achieving discovery on spurious allegations, and to force a plaintiff to illustrate the specific details before making damaging allegations of fraud. The parties here have a 34-year history and engaged in extensive discovery and exchange of information for years. This dispute has existed in various forms for a long time. Likewise, this lawsuit was proceeding whether there was a fraud count or not, so the specificity requirements of the pleading rule were much less apt in this situation and were not needed to avoid a frivolous suit or personal character besmirchment. With or without Count III the parties envisioned a lengthy trial—indeed MONY was seeking disgorgement of all disability payments ever made to Perez, back to 2011.

In Florida, common law fraud is generally considered a jury question since it involves factual questions of whether a statement was knowingly false and was relied upon detrimentally by the plaintiff. *L & S Food Services, Inc. v. Roberts Cafeteria, Inc.,* 422 So. 2d 45 (Fla. 2d DCA 1982). "[F]raud is not ordinarily a

11

suitable subject for summary judgment." *Grimes v. Lottes,* 241 So. 3d 892, 896 (Fla. 2d DCA 2018); *Levey v. Getelman,* 408 So. 2d 663, 666 (Fla. 3d DCA 1981).

A key part of Perez's fraud claim is the assertion that DMS and MONY falsely portrayed DMS as a "third party administrator" under Fla. Stats. §626.88, *et. seq*. Perez has offered a list of factual assertions (*see* Doc. 266 at 19) that if proved true at trial may support the fraud claim. Counter-defendants assert that their statements were "demonstrably true." Perez has shown sufficiently contested issues of material fact to put in contest his claim that "DMS's representations that it was an Administrator were simply false and known to be so by MONY/DMS." *Id.* at 20. He has also alleged other false statements made in the Perez/MONY relationship that he claims he will prove as material and false, causing his detrimental reliance. *Id.* at 20. These are stoutly denied by movants, albeit remain contested issues of fact.

Based on the foregoing, the motion for summary judgment (Doc. 244) is denied.

**DONE AND ORDERED** at Tampa, Florida, on February 22, 2022.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO**:
Counsel of record